OATES, Respondent, vs. ERSKINE'S ESTATE, Appellant.

*January 16—February 3, 1903.*

**Estates of decedents: Claims: Express contract: Evidence: Instructions to jury.**

1. An action against the estate of a decedent for board was based on an express contract.   The claimant and decedent were not relatives.   The court instructed the jury, that "it is not absolutely necessary to the establishment of an express contract: that the witnesses should be produced who were present when the contract was made.   It may be inferred from circumstances established to the satisfaction of the jury as true by the evidence, if from such facts and circumstances the jury are convinced that the express contract claimed was in fact made." *Held,* that no error was thereby committed, as the rule that an express contract for board or service can only be established by direct and positive evidence, or by circumstantial evidence equivalent to direct and positive evidence, only applies where the parties are near relatives.   *Tyler v. Burrington,* 39 Wis. 376, and *Wells v. Perkins,* 43 Wis. 160, distinguished.

2. In an action on an express contract the defendant is not prejudiced by correct instructions as to implied contracts, the jury having been expressly charged that there can be no recovery on an implied contract.   Such instructions amount to a warning to the jury, fairly tending to warn them against the error of bringing in a verdict based on an implied agreement, in case an express contract was not shown to their satisfaction.

APPEAL from a judgment of the circuit court for Iowa county:  GEO. CLEMENTSON, Circuit Judge.  *Affirmed.*

This is a claim against an estate to recover the reasonable value of several years' board furnished to the intestate in her lifetime. It appeared that the deceased, who was an unmarried woman, began boarding with the plaintiff at Chicago February 1, 1887, and continued to board there until November 15, 1893; that such board was reasonably worth the sum of $4 per week, and that no part of it was ever paid for; also that there was no relationship of any kind between the parties. The plaintiff claimed that at the time the deceased commenced to board with her it was agreed that the board should be paid for when William Walker, an uncle of the deceased (seventy years of age), should die, and the deceased come into possession of his estate, as she expected to do. The answer denied the making of this contract, and pleaded the statute of limitations. The evidence showed that William Walker died May 25, 1899, leaving his property to said Sarah Erskine, who died February 3, 1900, while the estate of William Walker was being administered. The principal contest upon the trial was upon the question whether the express contract above mentioned was ever made. The only direct evidence upon the subject was the testimony of the plaintiff's father, who testified, in substance, that when the deceased came to board with the plaintiff it was understood that she expected to receive a large portion of the estate of her uncle, William Walker, and that she then said that when she came into possession of that property she would make the board all right. There was also testimony by other witnesses of conversations held with the deceased at various times, in which she stated that she intended to pay the plaintiff, or that she proposed to give her $1,000, or that some day she would be able to pay the plaintiff, and words of similar import. On the part of the defendant there was testimony showing that the deceased received $5,000 in property and money from the estate of an uncle in 1888 and 1889. The death of William Walker, leaving an estate of $10,000 to the

deceased, in May, 1899, was admitted, and it was shown that
the deceased took immediate possession of said estate, and
made some loans therefrom; also that she made two or three
small loans to the plaintiff's father and brother while she was
living with the plaintiff. The court, upon defendants' mo-
tion, instructed the jury to the effect that the burden of proof
to establish the contract claimed was on the plaintiff, and that
payment might be inferred from facts proven to their satis-
faction, and that it is not necessary that payment be proven
by receipt or instrument in writing. In connection with this
instruction the court further charged the jury that:

"It is not absolutely necessary to the establishment of an
express contract that witnesses should be produced who were
present when the contract was made. It may be inferred
from facts and circumstances established to the satisfaction
of the jury as true by the evidence, if, from such facts and
circumstances, the jury are convinced that the express con-
tract claimed by the plaintiff to have been made was in fact
made."

The court further, after stating plaintiff's claim, charged
the jury of its own motion as follows:

"(2) One who goes to board with another, whether any-
thing is said about the price of board or not, is, by the law,
implied to agree to pay what his board is reasonably worth.

"(3) So, when Miss Erskine went to board with the
plaintiff, the law would imply that she was bound to pay for
her board what it was reasonably worth, from time to time,
and the whole of what was due for board would be due and
payable at once after she quit boarding with the plaintiff.
What I have just stated you will understand to refer only to
the supposed case that there was no agreement made between
the plaintiff and Miss Erskine regarding her boarding and
the time when the amount owing for her board was to be
paid.

"(4) The plaintiff can recover nothing in this action upon
an implied contract, for the reason that, as I have stated,
upon such a contract all the indebtedness for board would be
due and collectible on November 16, 1893, the day after she

left finally as a boarder the home of the plaintiff, and the six-years statute of limitations would begin to run against the plaintiff's claim upon that day, and on November 16, 1899, the claim would be barred, and be noncollectible against Miss Erskine; and her estate, after her death, would not be liable for it.

"(5) What I have said in reference to the law of implied contract, I have thought it best to say for your information, although the plaintiff does not seek to recover in this action upon an implied contract.

"(6) The plaintiff bases her claim upon an express contract.

"(7) The contention of the plaintiff is that, when Miss Erskine began to board at her home, or about that time, she made known the fact that she was, or expected to be, the heir or the devisee of her uncle, William Walker, when he died, and that it was then understood and agreed between the plaintiff and her that she would board at the plaintiff's home, and pay the plaintiff what was coming to her for such board, when her uncle died, and she came into his property.

"(8) If you are convinced by the preponderance of the evidence, taking into careful consideration all the facts and circumstances established by it, that the contention of the plaintiff as set forth in the last paragraph is true, and if you are also convinced that the board aforesaid has not been paid for, your verdict should be in favor of the plaintiff for such a sum as you are convinced by the evidence was the reasonable amount due to the plaintiff under express contract for the board of Miss Erskine on the 16th day of October, 1900, the date of the filing the plaintiff's claim in the county court, with interest thereon from the date last mentioned to to-day at six per cent.

"(9) If you are not convinced that there was such an express contract between the plaintiff and Miss Erskine as is set forth in the foregoing paragraph No. 7, your verdict will be for the defendant.

"(10) Also, if you find that all that was due the plaintiff for board was paid by Miss Erskine in her lifetime, your verdict will be for the defendant. I have instructed you already that the burden of proof is upon the plaintiff to convince you that the agreement for the payment for the board as

·set forth in the seventh paragraph of my *instructions* was
·made, but I omitted to instruct you, as the law requires, and
as I now do, that the burden is upon the defendant to con-
·vince you that the board was paid for. In other words, one
·who claims that a debt he owes has been paid must prove it."

The jury returned a verdict for the plaintiff for $1,479.33.
A motion to set aside the verdict and for a new trial was
·made and overruled, and from judgment upon the verdict the
·defendant appeals.

For the appellant there was a brief by *J. M. Smith* and
*Spensley & McIlhon,* and oral argument by *Calvert Spensley.*

For the respondent there was a brief by *Fiedler & Fiedler,*
·and oral argument by *E. C. Fiedler.*

WINSLOW, J. The defendant's most important contention
·is that the court made fatal errors in instructing the jury as
·to the proof necessary to establish the making of the express
·contract alleged. What the court said upon this point was as
·follows:

"It is not absolutely necessary to the establishment of an
·express contract that witnesses should be produced who were
·present when the contract was made. It may be inferred from
·facts and circumstances established to the satisfaction of the
·jury as true by the evidence, if from such facts and circum-
·stances the jury are convinced that the express contract
·claimed by the plaintiff to have been made was in fact made."

The defendant claims that the same rule of evidence ap-
·plies in this case as would apply had the parties been near
·relatives, namely, that such an express contract "can only be
·established by direct or positive evidence, or by circumstan-
·tial evidence equivalent to direct and positive." *Tyler v.
Burrington,* 39 Wis. 376; *Wells v. Perkins,* 43 Wis. 160.
The idea is plainly erroneous. The very stringent rule above
·cited is a special and exceptional rule, which has been laid
down by the courts in cases of services rendered or board
·furnished by one near relative to another, because in such

cases no contract to pay for them can be implied; but, on the other hand, there is a positive presumption that the services or board were intended to be gratuitous. To meet this presumption, and guard against the possibility of the implication of a contract by the jury in such cases, it was deemed that the exceptional rule above stated should be applied. In the absence of such relationship, however, as in the present case, there is no presumption to be overcome, and an express contract may be shown by proof of independent facts and circumstances which convince the jury that the contract was in fact made, just as any other fact in issue may be proven by such evidence. This was, in substance, what the court charged the jury in the present case, and there was, therefore, no error.

The defendant also claims that the trial court erred in giving any charge to the jury on the subject of implied contract, for the reason that there could be no recovery in the case on an implied contract to pay because it would be barred by the statute of limitations; hence the question was not in the case and instructions thereon were liable to confuse the jury. The law, as stated by the court, was certainly correctly stated; and, while there was no recovery sought on implied contract, we think the instructions were entirely proper for the information of the jury in order that they might more fully appreciate the situation of the parties. The court expressly told the jury that there could be no recovery on such a contract, and that the express contract alleged must be proven, in order to entitle the plaintiff to recover. That part of the charge pertaining to this subject, when taken together, amounts rather to a warning to the jury, fairly tending to guard them against the very natural error of thinking that they might find a verdict based on an implied agreement in case the express contract was not shown.

The remaining contentions made by the appellant are all embraced in the claim that the evidence submitted was in-

sufficient to prove the express contract alleged. We shall not review the evidence. It must be enough to say that, in our judgment, it was sufficient.

*By the Court.*—Judgment affirmed.