ESTATE OF SCHMIDT: SCHMIDT, Administrator, Appellant, vs. WENNIGER, Claimant, Respondent.

*November 9—December 8, 1942.*

*H. K. Curtis* of Milwaukee, for the appellant.

For the respondent there was a brief by *Patrick J. Mc-Caffrey* and *Delbert Schmahl,* both of Milwaukee, and oral argument by *Mr. McCaffrey.*

ROSENBERRY, C. J. It appears without dispute that the claimant lived with her father from her birth to the time of her father's death in 1937. She married in 1920 and her husband then became a member of the father's family. Her mother died in 1925, after which time claimant and her husband continued to live with her father. In 1926 a child was born to the claimant and shortly thereafter she and her husband separated. They were divorced in 1931. The father left on December 7, 1925, for a trip to Europe and returned to Milwaukee in the month of April, 1926. For about three and one-half years in a period around 1918, the plaintiff was employed on war work at a weekly wage of $25. With her earnings and money received from her husband she had at one time a savings account of approximately $1,500. This money she used to support and maintain herself and her minor son while she lived with her father. There is no claim that she did not live with her father as a member of his family. Her husband never provided a home for her so far as the evidence discloses. For some years her mother's father was a member of the family. He died in 1931.

The law is clear that in the absence of an express contract the respondent could not recover for services rendered to her father. *Miller v. Estate of Bell* (1937), 224 Wis. 593, 273 N. W. 67. In order to establish such a claim, claimant must prove the contract by direct and positive evidence. *Estate of Shimek* (1936), 222 Wis. 98, 266 N. W. 798. It is the contention of the administrator that the proof is insufficient to sustain the finding made by the trial court to the effect that an express contract was entered into on or about January 1, 1926.

To support the finding, respondent relies upon the testimony of three witnesses. Nettie North testified:

"I was present several times when Meta Wenniger and her father discussed household affairs. The last two years when Mr. Schmidt lived I even heard arguments on account of that she wanted salary, her salary. On one special occasion, they

were arguing, because Meta wanted wages, she said she just couldn't go on this way—I heard that several times and Mr. Schmidt said that he wanted to give her the wages but said that his money had to go back into the homes to save the homes; one time he mentioned her wages had to go into the home because he wanted to save the home.

"*Q*. Will you state Mrs. North just what Julius F. Schmidt said in response to Meta asking him for wages? *A*. He said 'I would;' he would pay her but he didn't have the money he said, the money he had had to go into the homes to save the homes."

Anton Schaefer testified that he never heard any conversations between claimant and her father, but testified that Mr. Schmidt said to him:

"Well, I have trouble again, my daughter, she always claims she cannot get along this way. I would like to pay her wages. I don't pay her anything. I can't afford it. I pay her as soon as I can."

Otto Rauschwalbe, seventy-seven years of age, had known the deceased for over sixty years. He testified:

"In the course of time, Meta wanted to leave him [the father]. They had a fight one morning in their home some years ago. I went over there and talked with him. Meta was packing her trunk. I said, 'Oh, Mr. Schmidt, what is the matter?' He says 'She wants to leave me.' He says 'I don't give her money enough. I got no money; I can't give her; she gets everything I got and well, I can't give her and I got no money to pay her.' Then he says 'She wants pay. I got no money; I can't pay her now.'"

It is considered that this evidence is not of the clear and satisfactory kind necessary to establish an express contract under the circumstances of this case. It tends to disprove rather than to establish the fact that a contract was entered into. No doubt the father felt himself under obligations to respondent but he never expressed his obligations in an enforceable agreement. The claimant never left her father's

home. While during the war years she earned good wages, it is apparent that the money she thus earned was expended by her for personal needs and for the partial maintenance of her son. As was said in *Estate of Goltz* (1931), 205 Wis. 590, 238 N. W. 374, compensation cannot be awarded to near relatives by blood or marriage for services rendered by one to the other upon mere equitable considerations.

*By the Court.*—Judgment appealed from is reversed, with directions to disallow the claim.