WILL OF LEVY: CHAMBERLAIN, Administrator, and another, Appellants, vs. WAITE and others, Respondents.

*December 4, 1939—March 12, 1940.*

Thomas E. Torphy and Martin J. Torphy, both of Milwaukee, for the appellants.

Martin J. Price and L. A. Willenson, both of Milwaukee, for the respondents Lucille Levy Waite and Samuel E. Levy.

George P. Ettenheim of Milwaukee, for the respondent First Wisconsin Trust Company.

R. J. Schimmel of Milwaukee, guardian ad litem.

The following opinion was filed January 16, 1940:

FOWLER, J. The proceeding is for construction of the will of Sally M. Levy commenced by the trustees of a trust created by the will. The will was admitted to probate in 1910. It created a trust of $30,000 to "be held in trust for the joint use and benefit" of the testator's son Samuel and his granddaughters, Lucille and Ruth, daughters of Samuel, and other children of Samuel during the lifetime of Samuel, the income to be paid to them meanwhile, and on his death to Lucille and Ruth and other children of Samuel in "equal shares" if or when twenty-five years old. At the death of the testator Lucille and Ruth were still living and no other children had then been or now have been born to Samuel.

Ruth died November 12, 1936, leaving surviving a son, Jay Chamberlain, then eleven years old. Samuel and Lucille

are still living. The questions for determination are, (1) whether the income of the trust shall be divided between Samuel and Lucille, the survivors of Ruth, or one third thereof shall be paid to Jay Chamberlain as the heir of his mother, Ruth; (2) whether it shall be determined how on the death of Samuel the corpus of the trust shall go under the situation that shall then exist, and if so to whom it shall go.

The trial court held, (1) that the person or persons entitled to the income of the trust from the death of "Ruth to the death of Samuel . . . can be determined at this time without first determining the person or persons entitled to the principal of said trust at its termination," and that the income of the trust "be paid to said Samuel . . . and those of his children as may be living from time to time" in equal shares and "that no portion of such income be paid to the issue of any deceased child" of Samuel. This excludes Jay Chamberlain, the heir of Ruth, from any portion of the income of the trust during the life of Samuel.

The trial court also held, (2) "that no exigency has arisen requiring at the present time a determination of the person or persons" entitled to the corpus of the trust when it ends at Samuel's death, and that all applications in the present proceedings for a determination of such persons "have been prematurely made," and the petitions for such determination were dismissed without prejudice.

(1) The language of the provision of the will involved reads as follows:

"Fifth: I give and bequeath to the trustees hereinafter named the sum of fifty thousand dollars ($50,000) of my life insurance money, to be held in trust and disbursed by them, or their successors, as follows:

"Thirty thousand dollars ($30,000) of said sum shall be held in trust for the joint use and benefit of my beloved son Samuel E. Levy and my granddaughters Lucille and Ruth Levy and other children of my said son Samuel E. Levy, the interest or income from which to be paid to said beneficiaries

in monthly or quarterly instalments or otherwise as my said trustees may determine, during the lifetime of my said son Samuel E. Levy and in the event of his death the said $30,000 shall be paid to my said grandchildren Lucille and Ruth Levy and other children of my said son Samuel E. Levy in equal shares if they shall have reached the age of twenty-five years, otherwise the same shall remain in trust for them until they shall have individually reached the age of twenty-five years, and

"Twenty thousand dollars ($20,000) of said sum shall be held in trust by my said trustees for the period of twenty years from and after my death, the interest or income from which to be used in assisting relations or doing charitable work, in manner and to the extent as my said trustees may determine; and said sum of $20,000, at the expiration of said twenty-year period, shall be divided equally, share and share alike, to and among my then living grandchildren."

The $20,000 trust has terminated and the corpus has been divided as therein directed.

It is fundamental that the meaning of a provision of a will shall be determined from the will itself with the aid of such extrinsic facts as may throw light on the intent of the testator. This rule is so long established and well known that citation of authorities in its support would be mere supererogation. Other rules of construction become applicable only as aids in applying this fundamental rule.

Application of this rule leads us to conclude that the ruling of the county court was correct as to division of the income of the $30,000 trust during the life of Samuel. The word "trust" hereinafter refers to this trust unless otherwise expressly stated. In *Benner v. Mauer,* 133 Wis. 325, 327, 113 N. W. 653, the provision relating to payment of interest on a trust fund, "the interest . . . shall be paid annually to my sons Bert and John during their lives," was held to mean that the income should be divided equally between the two sons while both should live and that after the death of one all of the interest should be paid to the survivor during his life.

This was said by this court to "seem to be the plain ordinary meaning" of the words above quoted. The words of the instant will as to division of the income of the trust: "The interest or income from which [the trust fund] to be paid to said beneficiaries [Samuel and his children] . . . during the lifetime" of Samuel, are of the same import. If the plain and ordinary meaning of the words of the Benner will was that the income should be divided between the two sons while they both lived and be paid to the survivor when one died, the plain and ordinary meaning of the words here involved is that the income shall be divided between Samuel and his children Ruth and Lucille and children subsequently born to Samuel while they all live and on the death of one of the children all shall be divided between the survivors. We do not perceive anything in the other portions of the will to indicate any other intent, nor anything in the circumstances of the testator so to indicate. The entire will, except the opening and concluding clauses, is set out in the margin.[1]

[1] "First: I will and direct that all of my just debts and funeral expenses and the expenses of my last sickness be first paid out of my estate.

"Second: It is my will that my beloved wife, Emma Levy, shall have the absolute use and enjoyment during her lifetime, of my homestead, known as 1110 Grand avenue, in the city and county of Milwaukee, state of Wisconsin, together with the contents thereof and which may be in use therein and in connection therewith at the time of my death, such as plateware, furniture, jewelry, library, horses and carriages and other things.

"Third: I give and bequeath to my beloved wife, Emma Levy, for use for her household and personal expenses during her lifetime, one half of the net annual income from my entire residuary estate, annually, except that when such net half thereof exceeds the sum of twelve thousand dollars ($12,000) in any year, then the amount to be paid to her shall be limited to twelve thousand dollars ($12,000) in every such year; said sum to be paid from the earnings of my said estate annually or in quarterly or semiannual instalments or otherwise as my executors or trustees may determine.

"Fourth: I give and bequeath to my beloved children Dorothy Levy Kletzsch, Henry J. Levy, Ruth Levy Pratt, Florence Levy Tisdale, and Elsa K. Levy, all the net income from my estate over and above that which is bequeathed to my beloved wife in the next preceding paragraph, annually, to be divided among them in equal

Whether the word "joint" in the phrase "for the joint use and benefit" should be given as much force as respondents contend, or none at all as appellants contend, in determining that upon the death of a child of Samuel the income should

and even shares, and to be paid annually or in quarterly or semi-annual instalments or otherwise as my executors or trustees may determine; it being my will that my beloved son Samuel E. Levy shall not participate in such division of the income from my estate because of the special provision for him in paragraph fifth below.

"Fifth: I give and bequeath to the trustees hereinafter named the sum of fifty thousand dollars ($50,000) of my life insurance money, to be held in trust and disbursed by them, or their successors, as follows:

"Thirty thousand dollars ($30,000) of said sum shall be held in trust for the joint use and benefit of my beloved son Samuel E. Levy and my granddaughters Lucille and Ruth Levy and other children of my said son Samuel E. Levy, the interest or income from which to be paid to said beneficiaries in monthly or quarterly instalments or otherwise as my said Trustees may determine, during the lifetime of my said son Samuel E. Levy and in the event of his death the said $30,000 shall be paid to my said grandchildren Lucille and Ruth Levy and other children of my said son Samuel E. Levy in equal shares if they shall have reached the age of twenty-five years, otherwise the same shall remain in trust for them until they shall have individually reached the age of twenty-five years, and

"Twenty thousand dollars ($20,000) of said sum shall be held in trust by my said trustees for the period of twenty years from and after my death, the interest or income from which to be used in assisting relations or doing charitable work, in manner and to the extent as my said trustees may determine; and said sum of $20,000, at the expiration of said twenty-year period, shall be divided equally, share and share alike, to and among my then living grandchildren.

"Sixth: The rest, residue and remainder of my estate, real, personal and mixed, shall be held in trust during the lifetime of my beloved wife, Emma Levy, and during that period said trustees shall take, hold, preserve, and administer such residuary estate and collect the rents and profits from the same and disburse the earnings thereof in accordance with the provisions of this will.

"Seventh: After the death of my beloved wife, Emma Levy, the rest, residue and remainder of my estate, real, personal and mixed, shall be divided equally among my said children, Dorothy Levy Kletzsch, Henry J. Levy, Ruth Levy Pratt, Florence Levy Tisdale, and Elsa K. Levy; it being my will that my said son Samuel E. Levy shall not participate in the division of the residuary estate, special· provision having been made for him and his children, in the fifth paragraph of this will."

be divided between or among the survivors, the presence of the word cannot serve to take away from the phrase the meaning of incidental survivorship that the phrase would have had the word not been included. Whatever effect the presence of the word has by analogy to indicate intent that the income should be divided between the surviving beneficiaries should a child of Samuel die, tends to strengthen the inference of that intent that the phrase would have had without it.

The parties to the appeal have based their contentions principally upon the proposition whether the right to the income from the trust vested in Samuel and his children on the testator's death. The appellants contend that the interest in the income so vested and that as a result thereof Samuel and his children became tenants in common of this income and the right of Ruth to share in it passed to her son Jay. The respondents contend that the right to the income did not so vest, but that whether it did or not, because of the use of the word "joint" in the phrase "for the joint use and benefit" Samuel and his children became joint tenants of the income and that the incident of survivorship attached as in case of joint estates and Ruth's share of the income passed to Samuel and Lucille. The term "joint tenancy" applies primarily to estates in land. It is true that it has been extended to cover interests in personal property, but when it has been so applied it has been as pertaining to rights of ownership in the property itself, as distinguished from right to receive the income from the property. Here the right to the income from the property is entirely independent of ownership of the property. Samuel has no estate in the trust property. Whether the remainder of the corpus vested in Ruth and Lucille at the testator's death, subject to being opened to let in children born to Samuel, or not, may have controlling force in determining to whom the corpus of the trust shall go upon termination of the trust, but no part of the remainder in any of the testator's estate was ever to go to Samuel. This ap-

pears from the provisions of the $30,000 trust, those of the $20,000 trust and clause seventh which expressly excludes Samuel from participation in the property not included in these trusts. Whether the remainder in the corpus of the trust vested at the testator's death in his children or not cannot affect Samuel's rights to the income from it.

(2) We are also of opinion that the trial court was right in declining to determine now to whom the corpus of the trust shall go on the death of Samuel. It is true that in *Will of Grotenrath,* 215 Wis. 381, 254 N. W. 631, we held that the fact that there was presently due an inheritance tax on the estate of a deceased son who was one of four sons who took under the will of their father the remainder of personal property after a life estate in their mother afforded basis for determination whether the remainder vested at the death of the father or at the death of the life tenant, although the mother was still living. However, the life tenancy was soon to terminate, as the mother was over eighty years of age, and there was no doubt as to the persons to whom the remainder would go at whichever time it vested, and these persons were all before the court. The rule was recognized that where the time has not arrived for distribution of the property among remaindermen the courts will not determine questions that arise in the future under a state of facts that may change before the time for distribution arises in absence of some exigency requiring it. In the instant case children may yet be born to Samuel whose interests will be affected by the decision of the question the lower court declined to decide. Also none may be born and Lucille may die before Samuel. In the latter contingency the question will arise whether the corpus of the trust will all go to the children of the testator other than Samuel under the seventh, or residuary clause of the will. None of these persons are parties to the present controversy. In view of this we consider that the court was correct in holding that under the circumstances the petitions

for construction of the will as to whom the corpus of the trust shall be distributed at Samuel's death should be deferred, notwithstanding that if Ruth took a remainder in the corpus of the trust an inheritance tax on her such interest will be imposed by the California court in the settlement of her estate. The amount of that tax is of small consideration in comparison with the distributive rights that may arise under the contingency stated. If that contingency happens the children of the testator other than Samuel and the heirs or devisees of such as may predecease Samuel, should all have their day in court.

*By the Court.*—The judgment of the county court is affirmed.

The following opinion was filed March 12, 1940:

FOWLER, J. (*on motion for rehearing*). There is a motion for rehearing, based principally upon a statement in the opinion of the court from which the movants claim it appears that this court erroneously inferred that the residuary legatees of Sally M. Levy, the testator, were not made parties to the proceedings in the county court for construction of his will. It is true that the statement warrants that inference, and that the residuary legatees were properly made parties to those proceedings. What the court should have specifically said is that the residuary legatees were not parties to the appeal. They were not named in either case, brief, or notice of appeal as parties. No notice of appeal was served upon them. They did not appeal, and there was no adjudication as to their rights so that there was no reason or occasion for appeal by them. Sec. 274.12, Stats., contemplates that all persons in any way interested adversely to the appellant in a matter brought up by appeal should be made parties to the appeal. As much reason existed for making the residuary legatees parties to the appeal as existed for making them parties to the proceeding in the first instance.

The same reason exists for deferring decision as to distribution of the corpus of the trust because the residuary legatees are not parties to the appeal as would exist had they not been parties to the proceedings in the county court. There is therefore no occasion for changing the order postponing determination of to whom the corpus of the trust shall be distributed until the death of Samuel Levy.

The movants contend also that the opinion of the court misstates the provision of the will. The provisions of the will are given in the footnote in the opinion. We are unable to perceive that the provisions of the will are misstated.

The other matters urged upon the motion for rehearing were raised by the original briefs and argument. They received our consideration when we decided the case, and we believe are sufficiently covered by the opinion heretofore filed.

The motion for rehearing is denied, without costs.